IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SLEEP SCIENCE PARTNERS,

    Plaintiff,

  v.

AVERY LIEBERMAN; SLEEPING WELL, LLC; and DOES 1-10,

    Defendants.
                                     /

No. C 09-04200 CW

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

    Defendant Sleeping Well moves to dismiss Plaintiff Sleep Science Partners' claims for lack of personal jurisdiction.[1] Plaintiff opposes the motion. The Court heard the motion on November 12, 2009. Having considered oral argument and all of the papers submitted by the parties, the Court denies Defendant Sleeping Well's motion to dismiss.

BACKGROUND

    Plaintiff is a California-based business which manufactures, markets and sells an anti-snoring prescription mandibular repositioning device (MRD) called PureSleep. An MRD is an FDA

---

[1] Defendant Lieberman is a California resident and did not join in this motion. However, he is also represented by Sleeping Well's attorney who represents that Lieberman will consent to personal jurisdiction in the District of Vermont so that this litigation can proceed efficiently in a single proceeding.

regulated medical device which may only be obtained by prescription from a medical doctor or dentist.  In 2005, Plaintiff's founders developed a business model, the PureSleep Method, which allows consumers to purchase a PureSleep device without visiting a dentist.  Plaintiff implemented and marketed the PureSleep device through the PureSleep Method which consists of, among other things, a screening questionnaire, website, phone ordering system, and television commercials.  In early 2006, Plaintiff entered into discussions with Defendant Avery Lieberman, a California-based dentist, to see if Lieberman would prescribe the PureSleep device using the PureSleep Method.  As a condition of discussing the PureSleep Method, Plaintiff required Lieberman to sign a Non-disclosure Agreement.  At the time of these discussions, Plaintiff had not yet publicly displayed the PureSleep Method.  Lieberman helped Plaintiff refine the PureSleep Method until May, 2007, when he ceased all communication with Plaintiff.  Plaintiff launched its website and PureSleep Method in November, 2007.

Plaintiff alleges that Lieberman contacted Daniel and Katrine Webster, Vermont residents, and told them how to use the PureSleep Method to sell MRDs.  Plaintiff claims that the Websters ordered an MRD from its website in order to test the functionality of the PureSleep device and copy the website's look and feel.  Plaintiff's website requires that anyone who orders a product must signify that he or she has read and agrees to be bound to Plaintiff's "Terms and Conditions" which state, in part, "No part of this website may be reproduced or transmitted."  Pl's Complaint, Ex 1.

On August 4, 2008, Daniel and Katrine registered the domain name "ZQuiet.com" and, in September, 2008, registered Defendant

2

1  Sleeping Well as a limited liability company with the Secretary of
2  State of Vermont.  Sleeping Well entered into a contract with Euro
3  RSCG Edge (EURO), a California-based media buying company, to
4  purchase television advertising air time.  EURO has always been and
5  is Plaintiff's exclusive television media buyer.  Plaintiff spent
6  over a year with EURO testing different television stations and air
7  times to find the most profitable way to market PureSleep.  Lindsay
8  Dec. at 21.
9       In April, 2009, Sleeping Well launched its television
10 commercials, website, and ordering system site.  Plaintiff alleges
11 that Sleeping Well misappropriated its PureSleep Method through
12 Lieberman and that its website has the same format, design, and
13 feel of Plaintiff's website.  Plaintiff also claims that Sleeping
14 Well directed EURO to target the same television stations and air
15 times that it uses to advertise PureSleep.
16      In September, 2009, Plaintiff filed a suit against Lieberman
17 and Sleeping Well in federal court, alleging copyright and trade
18 dress infringement, misappropriation of trade secrets, breach of
19 contract, breach of the implied covenant of good faith and fair
20 dealing, tortious interference, false advertising, unfair
21 competition and civil conspiracy.

                               LEGAL STANDARD

23      Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a
24 defendant may move to dismiss for lack of personal jurisdiction.
25 The plaintiff then bears the burden of demonstrating that the court
26 has jurisdiction.  Schwarzenegger v. Fred Martin Motor Co., 374
27 F.3d 797, 800 (9th Cir. 2004).  The plaintiff "need only
28 demonstrate facts that if true would support jurisdiction over the

defendant." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Uncontroverted allegations in the complaint must be taken as true. AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). However, the court may not assume the truth of such allegations if they are contradicted by affidavit. Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977). If the plaintiff also submits admissible evidence, conflicts in the evidence must be resolved in the plaintiff's favor. AT&T, 94 F.3d at 588.

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990); Data Disc, Inc., 557 F.2d at 1286. California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis. Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).

The exercise of jurisdiction over a non-resident defendant violates the protections created by the due process clause unless the defendant has "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

## DISCUSSION

Personal jurisdiction may be either general or specific. Plaintiff concedes that Sleeping Well is not subject to general jurisdiction, but argues that it is subject to specific

4

jurisdiction. Specific jurisdiction exists when the cause of action arises out of or relates to the defendant's activities within the forum. Data Disc, Inc., 557 F.2d at 1286. Specific jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities towards, or consummate some transaction with, the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). Each of these conditions is required for asserting jurisdiction. Insurance Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

I.  Purposefully Directed and Purposefully Availed

A showing that a defendant "purposefully directed" its conduct toward a forum state generally is used in tort cases, while a showing that a defendant "purposefully availed" itself of the privilege of doing business in a forum state is generally used in contract cases. Schwarzenegger, 374 F.3d at 802. Because Plaintiff alleges both tort and contract claims against Sleeping Well, the Court will look at both standards.

A.  Purposefully Directed

A showing that a defendant "purposefully directed" its conduct toward a forum state "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods

5

originating elsewhere." Id. at 803.  Purposeful direction may be established under the "effects test" where the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.  Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

Sleeping Well's actions, as alleged by Plaintiff, satisfy the "effects test."  Sleeping Well intentionally obtained Plaintiff's trade secrets from Lieberman, a California resident, intentionally copied Plaintiff's trade dress and business methods, and intentionally advertised and sold products in California in direct competition with Plaintiff.  Sleeping Well also entered into a contractual relationship with EURO, a California based media buying company which is also Plaintiff's television media buyer, in order to purchase television advertising airtime.  Plaintiff alleges that Sleeping Well instructed EURO to target the same television stations and air times that Plaintiff successfully uses to advertise PureSleep.  By allegedly misappropriating trade secrets from Lieberman and infringing on Plaintiff's trade dress and copyright, Sleeping Well expressly targeted Plaintiff's business in California and caused foreseeable harm to it in California.

Sleeping Well argues that it never committed any acts in California to obtain or copy Plaintiff's proprietary information, and therefore cannot be said to have purposefully directed its activities toward California.  However, the effects test does not require that the intentional act be committed in the forum, only that the wrongful conduct individually target a known forum resident.  Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d

6

1082, 1087 (9th Cir. 2000); see Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1259-60 (9th Cir. 1989) (holding that an Arizona court had specific jurisdiction over Canadian residents who, in response to telephone calls directed at them in Canada, made defamatory statements about a person they knew resided in Arizona). Even though Sleeping Well may have been in another forum when it misappropriated Plaintiff's trade secrets and infringed Plaintiff's trade dress and copyright, its acts targeted Plaintiff's proprietary information and business which is based in California.

Sleeping Well also argues that Plaintiff's alleged economic harm in California is not sufficient to satisfy the third prong of the effects test because Plaintiff sells its products nation-wide and, thus, its business is not centered in California. Relying on Panavision Int'l L.P. v. Toeppen, et al, 141 F.3d 1316, 1322 (9th Cir. 1998), Sleeping Well continues that whether the alleged harm is felt within the forum is not determined by where Plaintiff's business is physically located, but where Plaintiff's business is centered. It avers that the forum state must be where the "brunt of the harm" is felt, citing Core-Vent Corp., v. Nobel Industries AB, 11 F.3d 1482, 1486 (9th Cir. 1993). In Panavision, the defendant registered a website domain name using the trademark of Panavision, a California based corporation that manufactured and sold motion picture camera equipment. 141 F.3d at 1319. The Ninth Circuit held that the effects test was satisfied because the defendant's conduct "had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered." Id. at 1322.

Thus, Sleeping Well argues, the effects test would be satisfied only if Plaintiff's business were centered in California.

Sleeping Well is incorrect. After <u>Core-Vent</u> and <u>Panavision</u>, the Ninth Circuit clarified that the "brunt" of the harm need not be suffered in the forum state. <u>Yahoo! Inc. v. La Lique Contre Le Racisme</u>, 433 F.3d 1199, 1207 (9th Cir. 2006). Instead, the Ninth Circuit held that as long as a "jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." <u>Id.</u>; see also <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 785 (1984) (sustaining exercise of personal jurisdiction in New Hampshire even though "[i]t is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire.") Plaintiff has suffered harm in California that is sufficient to satisfy the third prong of the effects test.

B.   Purposefully Availed

A showing that a defendant "purposefully availed" itself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum. <u>Schwarzenegger</u>, 374 F.3d at 802. The requirement of purposeful availment ensures that the defendant should reasonably anticipate being haled into court in the forum state based on its contacts there. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). The purposeful availment test is met if "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." <u>Ballard</u>, 65 F.3d at 1498.

Sleeping Well has purposefully availed itself of doing

8

business in California.  In addition to marketing and shipping its products to California, Sleeping Well also maintains a continuous business relationship with Lieberman, its business consultant, who is featured on its website, "Zquiet.com."  Sleeping Well also has a business relationship with EURO, a media buyer, and maintains an account with a California bank.  Sleeping Well's maintenance of these relationships invokes the benefits and protections of California's laws.

Sleeping Well argues that merely operating a website that sells products to California consumers does not amount to purposeful availment because it markets its product to the nation as a whole and does not specifically target California.  Sleeping Well relies on Pavlovich v. Superior Court, 29 Cal. 4th 262, 274-75 (2002), to argue that creating a website, like placing a product in a stream of commerce, is not an act directed toward the forum state because, if it were, personal jurisdiction could be found in any forum in the country.  However, the court in Pavlovich was discussing a "passive" website on which the defendant merely posted information.  The Ninth Circuit has held that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Cybersell, Inc. v. Cybersell, Inc. 130 F.3d 414, 419 (9th Cir. 1997).[2]  Here, Sleeping Well maintains an interactive website that allows people to fill

---

[2] Sleeping Well cites Graduate Mgmt. Admission Council v. RVR Narasimha Raju d/b/a "GMATPlus.com", 241 F.Supp. 2d 589, 594 (E.D. Va 2003).  Although Graduate has similar facts and a different result than Cybersell, Inc., it is not controlling.  This Court must follow the Ninth Circuit standard set forth in Cybersell, Inc..

out a prescription survey and purchase its products online.  Under Cybersell, Inc.'s sliding scale test, Sleeping Well's commercial activity satisfies the "purposeful availment" requirement.

II.  Claim Arises Out of Defendant's Forum-Related Activities

The second factor for specific jurisdiction requires that the claim arise out of or result from the defendant's forum-related activities.  This factor is met if the claim would not have arisen "but for" the defendant's forum-related contacts.  Panavision, 141 F.3d at 1322.

Plaintiff's claims arise out of Sleeping Well's contacts with the forum.  But for Sleeping Well's relationship with Lieberman, Sleeping Well would not have obtained Plaintiff's proprietary business methods and trade secrets.  But for Sleeping Well's contacts with EURO, its television advertisements would not have directly competed with Plaintiff's, and Plaintiff would not have been harmed by consumer confusion and reduced sales.  But for Sleeping Well's marketing and selling its products to California consumers through its allegedly infringing website, Plaintiff would not have suffered a loss of sales in California.

III. Specific Jurisdiction is Reasonable

Once the plaintiff has satisfied the first two factors, the defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985); Haisten v. Grass Valley Medical Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).  Seven factors are considered in assessing whether the exercise of jurisdiction over a non-resident defendant is reasonable: (1) the

10

extent of the defendant's purposeful interjection into the forum state's affairs, (2) the burden on the defendant of defending in the forum, (3) conflicts of law between the forum state and the defendant's home jurisdiction, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the dispute, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995).

### A.   Purposeful Interjection

"Even if there is sufficient interjection into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong."  Core-Vent, 11 F.3d at 1488 (internal quotations and citations omitted).  In Panavision, the Ninth Circuit found that the purposeful interjection factor weighed strongly in the plaintiff's favor based on the fact that the defendant acted "knowing that" its registration of the plaintiff's domain name "would likely injure" the plaintiff who was located in California.  Panavision, 141 F.3d at 1323.  Similarly, according to the allegations, Sleeping Well knew through its contacts with Lieberman and EURO that, by misappropriating Plaintiff's trade secrets, infringing on its copyright and selling competing goods to California consumers, it would likely injure Plaintiff who is located in California.  Thus, Plaintiff satisfies the purposeful interjection prong, which weighs in favor of the Court's personal jurisdiction.

B.  Defendant's Burden in Litigating

A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Caruth, 59 F.3d at 128-29 (citing Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991)).

The burden on Sleeping Well, a small Vermont business, is significant, but the inconvenience is not so great as to deprive Sleeping Well of due process. See Panavision, 141 F.3d at 1323 (finding an Illinois defendant's burden in litigating in California significant, but not unreasonable). Because of modern technology such as fax machines, email and video phone, requiring Sleeping Well to litigate in California is not constitutionally unreasonable. Id.; Dole Foods, 303 F.3d at 1115.

C.  Sovereignty

This factor concerns the extent to which the district court's exercise of jurisdiction in California would conflict with the sovereignty of Vermont, Sleeping Well's domicile. Core-Vent, 11 F.3d at 1489. Sleeping Well concedes that there would be no conflict if the Court exercised jurisdiction.

D.  Forum State's Interest

"California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." Gordy v. Daily News, L.P., 95 F.3d 829, 836 (9th Cir. 1996) (citing Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1200 (9th Cir. 1988)). Sleeping Well concedes that this factor weighs in Plaintiff's favor.

E.  Efficient Resolution

This factor focuses on the location of the evidence and witnesses. Caruth, 59 F.3d at 129. It is no longer weighed heavily given the modern advances in communication and transportation. Id.; Panavision, 141 F.3d at 1323. Both Sleeping Well and Plaintiff indicate they have witnesses and evidence in their respective forums. Because neither party presents a stronger case, this factor is neutral.

F.  Convenience to Plaintiff

"In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience." Panavision, 141 F.3d at 1324; Ziegler v. Indian River County, 64 F.3d 470, 476 (9th Cir. 1995). It may be somewhat more costly and inconvenient for Plaintiff to litigate in another forum but, as discussed above, modern advances in communications and transportation make the burden on Plaintiff relatively slight. This factor is essentially neutral, weighing only slightly in Plaintiff's favor.

G.  Alternative Forum

In this case, Vermont is an alternative forum. As stated above, it may be more costly and inconvenient for Plaintiff to litigate in Vermont, but this is not an unreasonable burden. This factor weighs in Sleeping Well's favor.

H.  Balancing the Reasonableness Factors

Although some factors weigh in Sleeping Well's favor, it fails to present a compelling case that this Court's exercise of jurisdiction in California would be unreasonable. Because all of the requirements for specific jurisdiction are satisfied, the Court

13

exercises personal jurisdiction over Sleeping Well.

## CONCLUSION

For the foregoing reasons, the Court denies Sleeping Well's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.

Dated: 11/23/09

                                      CLAUDIA WILKEN
                                      United States District Judge

**United States District Court**
For the Northern District of California