1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7               FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   SLEEP SCIENCE PARTNERS,                    No. 09-04200 CW

10        Plaintiff,                           ORDER GRANTING IN
                                               PART AND DENYING
11     v.                                      IN PART DEFENDANT
                                               SLEEPING WELL,
12   AVERY LIEBERMAN and SLEEPING WELL,        LLC'S MOTION TO
     LLC,                                      DISMISS
13                                             (Docket No. 27)
          Defendants.
14   _____/

15

16        Defendant Sleeping Well, LLC moves to dismiss Plaintiff Sleep

17   Science Partners' claims for trade dress infringement, copyright

18   infringement, tortious interference with contract, common law

19   misappropriation, unfair competition, civil conspiracy and unjust

20   enrichment.  Defendant Avery Lieberman has answered the complaint

21   and does not join in the motion.  Plaintiff opposes the motion.

22   The motion was taken under submission on the papers.  Having

23   considered all of the papers submitted by the parties, the Court

24   GRANTS Sleeping Well's motion in part and DENIES it in part.

25                              BACKGROUND

26        The following allegations are contained in Plaintiff's

27   Complaint.

28        Plaintiff is a California-based business which manufactures,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

markets and sells an anti-snoring prescription mandibular repositioning device (MRD) called PureSleep. An MRD is an FDA-regulated medical device that may only be obtained by prescription from a medical doctor or dentist. In 2005, Plaintiff's founders developed a business model, the PureSleep Method, which allows consumers to purchase a PureSleep device without visiting a dentist. The PureSleep Method consists of, among other things, a screening questionnaire, website, telephone ordering system, and television commercials. Plaintiff implemented and marketed the PureSleep device through the PureSleep Method.

In early 2006, Plaintiff entered into discussions with Defendant Avery Lieberman, a California-based dentist, to see if he would prescribe the PureSleep device using the PureSleep Method. As a condition of discussing the PureSleep Method, Plaintiff required Dr. Lieberman to sign a non-disclosure agreement. At the time of these discussions, Plaintiff had not yet publicly displayed the PureSleep Method. Dr. Lieberman helped Plaintiff refine the PureSleep Method until May, 2007, when he ceased all communication with Plaintiff. Plaintiff launched its website and began marketing through the PureSleep Method in November, 2007.

Plaintiff alleges that Dr. Lieberman contacted Daniel and Katrine Webster, Vermont residents, and told them how to use the PureSleep Method to sell MRDs. Plaintiff claims that the Websters ordered an MRD from its website in order to test the functionality of the PureSleep device and copy the website's look and feel. Plaintiff's website requires anyone who orders a product to signify that he or she has read and agrees to be bound by Plaintiff's

2

"Terms and Conditions" which state, in part, "No part of this website may be reproduced or transmitted." Pl.'s Compl., Ex. 1.

On August 4, 2008, the Websters registered the domain name "ZQuiet.com" and, in September, 2008, registered Defendant Sleeping Well as a limited liability company with the Secretary of State of Vermont. Sleeping Well entered into a contract with Euro RSCG Edge (Euro), a California-based media buying company, to purchase television advertising air time. Euro has always been and is Plaintiff's exclusive television media buyer. Plaintiff spent over a year with Euro, which tested different television stations and air times to find the most profitable way to market the PureSleep device. Lindsay Decl. ¶ 21.

In April, 2009, Sleeping Well launched its television commercials, website and ordering system. Plaintiff alleges that Sleeping Well misappropriated its PureSleep Method through Dr. Lieberman and that its website has the same format, design and feel as Plaintiff's website. Plaintiff also claims that Sleeping Well directed Euro to target the same television stations and air times that it uses to advertise the PureSleep device.

In October, 2009, Sleeping Well moved to dismiss Plaintiff's claims against it for lack of personal jurisdiction. The Court denied this motion, concluding that it has specific jurisdiction over Sleeping Well. See generally Order of Nov. 23, 2009 Denying Def.'s Mot. to Dismiss (Docket No. 23).

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

3

United States District Court
For the Northern District of California

Civ. P. 8(a).  Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

DISCUSSION

I.   Trade Dress Infringement Claim

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127).  The Act "prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill." Id. at 32.  To this end, section 43(a) of the Act, 15 U.S.C. § 1125(a), proscribes "the use of false designations of origin, false descriptions, and false representations in the advertizing and sale of goods and services." Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc., 407 F.3d 1027, 1036 (9th Cir. 2005) (citing Smith v. Montoro, 648 F.2d 602, 603 (9th

4

1   Cir. 1981)).

2       Plaintiff charges Sleeping Well with trade dress infringement,

3   in violation of § 43(a) of the Lanham Act.  Plaintiff describes its

4   trade dress as the "unique look and feel of SSP's website,

5   including its user interface, telephone ordering system and

6   television commercial . . . ."  Compl. ¶ 84.  Sleeping Well argues

7   that Plaintiff fails to define its trade dress with sufficient

8   clarity.  Sleeping Well also asserts that Plaintiff's trade dress

9   infringement claim seeks protection of rights covered by the

10  Copyright Act and that such claims should be dismissed.

11      A.   Plaintiff's Alleged Trade Dress

12      "Trade dress protection applies to 'a combination of any

13  elements in which a product is presented to a buyer,' including the

14  shape and design of a product."  Art Attacks Ink, LLC v. MGA Entm't

15  Inc., 581 F.3d 1138, 1145 (9th Cir. 2009) (quoting J. Thomas

16  McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at

17  8-3 (4th ed. 1996)).  "Trade dress involves 'the total image of a

18  product and may include features such as size, shape, color or

19  color combination, texture, graphics, or even particular sales

20  techniques.'"  Mattel, Inc. v. Walking Mountain Prods., 353 F.3d

21  792, 808 n.13 (9th Cir. 2003) (quoting Two Pesos, Inc. v. Taco

22  Cabana, Inc., 505 U.S. 763, 765 n.1 (1992)).  In evaluating a trade

23  dress claim, a court must not focus on individual elements, "but

24  rather on the overall visual impression that the combination and

25  arrangement of those elements create."  Clicks Billiards, Inc. v.

26  Sixshooters, Inc., 251 F.3d 1252, 1259 (9th Cir. 2001).  "Trade

27  dress is the composite tapestry of visual effects."  Id.

28                                  5

United States District Court
For the Northern District of California

A plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice. See Walker & Zanger, Inc. v. Paragon Indus., Inc., 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007) (citing Yurman Design, Inc. v. PAJ, Inc., 262 F.2d 101, 115 (2d Cir. 2001)); Autodesk, Inc. v. Dassault Systemes SolidWorks Corp., 2008 WL 6742224, at *5 (N.D. Cal.).

Plaintiff appears to seek trade dress protection of its website, telephone ordering system and television commercial. Plaintiff has not clearly plead that it defines its trade dress as these three marketing components taken in combination. Nor has it alleged that these elements interact to create a particular visual impression. The Court therefore considers below whether Plaintiff pleads sufficient facts to support trade dress protection for each individual component.

Plaintiff seeks protection of its website's "unique look and feel." Compl. ¶ 84. It pleads that its website's features "include (1) the ability to view SSP's television commercial; (2) user testimonials; (3) the screening questionnaire; and (4) the PureSleep Method." Compl. ¶ 31. It also alleges that other components of the website's "design, look and feel are more subtle including, but not limited to, the size and location of text, the size and location of graphics, the features that it offers and the location of hyperlinks of those features." Id. Plaintiff then describes several other website design elements. Compl. ¶ 51. Although it has cataloged several components of its website, Plaintiff has not clearly articulated which of them constitute its purported trade dress. Notably, Plaintiff employs language

6

suggesting that these components are only some among many, which raises a question of whether it intends to redefine its trade dress at a future stage of litigation. Without an adequate definition of the elements comprising the website's "look and feel," Sleeping Well is not given adequate notice.

With regard to separate trade dress protection for its telephone ordering system, Plaintiff only pleads that, through it, consumers answer a screening questionnaire. The use of a screening questionnaire would not, on its own, constitute protectable trade dress. To afford such protection would allow Plaintiff to monopolize the use of a questionnaire in connection with a telephone ordering system. Moreover, trade dress generally applies to a visual impression created through a combination of elements. Thus, it is not clear that Plaintiff may seek trade dress protection of its telephone ordering system, but if it wishes to attempt to do so, it must provide additional detail.

Finally, concerning its television commercial,[1] Plaintiff claims that it is "made up of a variety of carefully designed components, including an introduction with the sound of loud snoring, graphics illustrating an MRD opening a human airway and user testimonials." Compl. ¶ 32. However, Plaintiff does not plead sufficiently descriptive details of the graphics or any other element of its television advertisement to qualify as protected trade dress. As with its telephone ordering system, Plaintiff must

---

[1] At least one court has concluded that television commercials can constitute protected trade dress. See Chuck Blore & Don Richman Inc. v. 20/20 Adver. Inc., 674 F. Supp. 671 (D. Minn. 1987).

more clearly describe the combination of elements contained in its television commercial for which it seeks trade dress protection.

Accordingly, the Court grants Sleeping Well's motion to dismiss Plaintiff's trade dress infringement claim. Plaintiff must articulate more clearly what constitutes its trade dress.

B.   Trade Dress Infringement and the Copyright Act

As noted above, Sleeping Well also contends that Plaintiff's trade infringement claim under the Lanham Act must be dismissed because it impermissibly overlaps with rights protected under the Copyright Act. Although Plaintiff has not adequately plead its trade dress, the Court provides the following as guidance for any amended pleading.

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). Protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." Id. § 102(b).

Courts have "long limited application of the Lanham Act so as not to encroach on copyright interests." 1 Melvin B. Nimmer & David Nimmer, Nimmer on Copyright, § 1.01[D][2] (2005); see also Dastar, 539 U.S. at 33 (declining to apply Lanham Act in manner that would cause a "conflict with the law of copyright"). A court should not "expand the scope of the Lanham Act to cover cases in

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

which the Federal Copyright Act provides an adequate remedy." Shaw v. Lindheim, 919 F.2d 1353, 1364-65 (9th Cir. 1990). "Parallel claims under the Copyright Act and Lanham Act, however, are not per se impermissible." Blue Nile, Inc. v. Ice.com, Inc., 478 F. Supp. 2d 1240, 1244 (W.D. Wash. 2007) (citing Nintendo of Am. v. Dragon Pac., Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994)); see also RDF Media Ltd. v. Fox Broad. Co., 372 F. Supp. 2d 556, 564 (C.D. Cal. 2005) (stating that "trademark and copyright protection may coexist," citing 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 6:5 (4th ed. 1996)).

As noted above, Plaintiff bases its trade dress infringement claim in part on the "look and feel" of its website. However, Plaintiff has filed for copyright protection for its website and seeks to sue for copyright infringement on this basis. Because Plaintiff has not adequately explained the "look and feel" of its website, it is not clear to what extent its purported trade dress falls within the scope of copyright. The Copyright Act could therefore afford an adequate remedy for the alleged infringement, and Plaintiff's trade dress infringement claim could overstep the line between the Lanham and Copyright Acts.

Nevertheless, it does not follow that a trade dress infringement claim based on the "look and feel" of a website must fail as a matter of law. Courts have concluded that a website's "look and feel" could constitute protectable trade dress that would not interfere with copyright interests. See, e.g., Conference Archives, Inc. v. Sound Images, Inc., ___ F. Supp. 2d ___, 2010 WL 1626072, at *14-*21 (W.D. Pa.); Blue Nile, 478 F. Supp. 2d at 1243.

Although it has not said so explicitly, Plaintiff may have plead its trade dress claim in the alternative, accounting for a possibility that its website may not be copyrightable.  However, even if Plaintiff were to plead as its trade dress a "look and feel" that does not encroach upon copyright interests, it would still bear the burden of establishing the elements of a trade dress infringement claim.  "To prove trade dress infringement, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products."  Art Attacks, 581 F.3d at 1145.

The Court need not decide this issue here because Plaintiff has not adequately identified the elements of its website that comprise its alleged trade dress.  However, if it intends to maintain a Lanham Act claim based on its website's "look and feel," in addition to articulating clearly the website features that comprise its alleged trade dress, Plaintiff must plead a "look and feel" that does not fall under the purview of the Copyright Act.

II.  Copyright Infringement Claim

Generally, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  The requirement for preregistration or registration of the copyright is not a

10

United States District Court
For the Northern District of California

jurisdictional requirement.[2]  Reed Elsevier, Inc. v. Muchnick, ___ U.S. ___, 130 S. Ct. 1237, 1248 (2010).  Instead, it is a non-jurisdictional, threshold element that a plaintiff must satisfy before asserting a claim.  Id.

Sleeping Well contests Plaintiff's assertion that its application to register the copyright of its website constitutes "preregistration."  The Ninth Circuit has not decided whether an application suffices as "preregistration," and there are conflicting decisions on the matter.  Compare Kema, Inc. v. Koperwhats, 658 F. Supp. 2d 1022, 1028-29 (N.D. Cal. 2009) (holding that an application does not constitute preregistration) with Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1091 (N.D. Cal. 2008) (concluding that plaintiff's application is "an action equivalent to 'preregistration'").  However, legislative history and associated regulations favor Sleeping Well's position.

The Family Entertainment and Copyright Act (FECA) of 2005 created a preregistration process for copyright.  Pub. L. No. 109-9, § 104, 119 Stat. 218, 221-22.  "FECA was concerned, in large part, with the piracy of movies and the subsequent sale and distribution of illegal copies of movies."  La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1207 (10th Cir. 2005).  To this end, preregistration addresses "works being prepared for commercial distribution."  17 U.S.C. § 408(f).  The House Judiciary Committee report on the underlying bill stated that

---

[2] Sleeping Well asserts that § 411(a) creates a jurisdictional bar.  However, its motion was filed before the Supreme Court's decision in Reed Elsevier, Inc., which held to the contrary.

§ 408(f)

> expressly requires the Register of Copyrights to issue
> regulations to establish a preregistration system for
> copyrighted works.  Since works are generally not
> formally copyrighted until they are in final form and
> ready for distribution to the public, civil remedies for
> the distribution of pre-release works are lacking.  This
> section will give the Register flexibility to determine
> which classes of works are appropriate for
> preregistration.

H.R. Rep. No. 109-33, at 4 (2005), reprinted in 2005 U.S.C.C.A.N.

220, 223.

A work is eligible for preregistration if it is

"(i) Unpublished; (ii) Being prepared for commercial distribution;

and (iii) In a class of works that the Register of Copyrights has

determined has had a history of infringement prior to authorized

commercial release." 37 C.F.R. § 202.16(b)(3).  "A work eligible

for preregistration may be preregistered by submitting an

application and fee to the Copyright Office pursuant to the

requirements set forth in this section." Id. § 202.16(c)(1).  "An

application for preregistration is made using Electronic Form PRE."

Id. § 202.16(c)(3).

Plaintiff's application for registration does not constitute

"preregistration" for the purposes of § 411(a).  Plaintiff does not

argue that it applied for preregistration or that it filed an

Electronic Form PRE.  Nor does it assert facts to suggest that the

website is eligible for preregistration.  On the contrary,

Plaintiff asserts that it applied for registration of its

copyright.  Moreover, it has already published the website on the

Internet and made it available to the public.  Although an

application for preregistration and payment of a fee could accord

United States District Court
For the Northern District of California

jurisdiction, an application for registration does not.

Accordingly, Plaintiff's copyright claim is dismissed without prejudice. Plaintiff may move to amend its complaint to add a copyright claim if the Copyright Office approves its application during the pendency of these proceedings.

III. Claim for Tortious Interference with Contract

Sleeping Well contends that it cannot be held liable for tortious interference with contract because Plaintiff pleads that it is a party to the contract with which it interfered.

"To recover in tort for intentional interference with the performance of a contract, a plaintiff must prove: (1) a valid contract between plaintiff and another party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 514 n.5 (1994) (citing Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990)). The "tort cause of action for interference with a contract does not lie against a party to the contract." Applied Equip. Corp., 7 Cal. 4th at 514 (citations omitted).

In its complaint, Plaintiff alleges that Sleeping Well induced its "employees or agents who have used SSP's website" to breach the site's "Terms and Conditions." Compl. ¶ 127. In its opposition, Plaintiff asserts that "a third party entered into the Terms and Conditions of SSP's website, and SW then encouraged that third party -- their web developers -- to breach SSP's website

agreement." Opp'n at 10.  Plaintiff then argues that it alleges

tort liability based on Sleeping Well's claimed interference with

the non-disclosure agreement between Dr. Lieberman and Plaintiff,

even though this theory is not explicitly raised in its Complaint.

Plaintiff, appearing to concede that its pleadings are not clear,

"requests leave to more fully articulate" its claim.  Opp'n at 10-

11.

Based on its Complaint, Plaintiff's tortious interference

claim fails.  Plaintiff avers that Sleeping Well "intentionally and

knowingly induced their employees and/or agents to access

www.puresleep.com in order to copy SSP's intellectual

property . . . ."  Compl. ¶ 125.  If this were so, then Sleeping

Well's employees and agents[3] accessed the website and assented to

the Terms and Conditions for the benefit of Sleeping Well.  This

conduct would make Sleeping Well a party to the Terms and

Conditions.  Am. Builders Ass'n v. Au-Yang, 226 Cal. App. 3d 170,

176 (1990) ("'A contract made by an agent for an undisclosed

principal is for most purposes the contract of the

principal, . . .'") (quoting Bank of Am. v. State Bd. of

Equalization, 209 Cal. App. 2d 780, 796 (1962)).  Assuming that the

Terms and Conditions constitute a contract, Sleeping Well cannot be

held liable for tortiously interfering with it.

Accordingly, Plaintiff's tortious interference with contract

claim is dismissed with leave to amend.  Should Plaintiff amend its

---

[3] The Court does not decide, on this motion, whether Sleeping Well's web developers were its agents.  Plaintiff's complaint does not allege that Sleeping Well interfered with its web developers' contracts with Plaintiff.

14

United States District Court
For the Northern District of California

pleadings, it may not allege facts that are inconsistent with those alleged in the current Complaint.

IV.   Claims for Common Law Misappropriation, Statutory and Common Law Unfair Competition and Common Law Unjust Enrichment

Sleeping Well contends that the Copyright Act and California's Uniform Trade Secrets Act (CUTSA) preempt Plaintiff's claims for common law misappropriation of its intellectual property, statutory and common law unfair competition and common law unjust enrichment. Alternatively, Sleeping Well asserts that Plaintiff has not sufficiently plead its unfair competition and unjust enrichment claims.

A.   Preemption

1.   Copyright Act

Two conditions must be satisfied for the Copyright Act to preempt state law: (1) "'the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103'" and (2) "'the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act.'" <u>Sybersound Records, Inc. v. UAV Corp.</u>, 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting <u>Downing & Abercrombie & Fitch</u>, 265 F.3d 994, 1003 (9th Cir. 2001)).

The "equivalent rights" prong of the test requires a court to consider whether the state claim asserts rights

> within the general scope of copyright as specified by section 106 of the Copyright Act. Section 106 provides a copyright owner with the exclusive rights of reproduction, preparation of derivative works, distribution, and display. To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the

15

nature of the action.

Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1143 (9th Cir.

2006) (quoting Del Madera Props. v. Rhodes & Gardner, 820 F.2d 973

(9th Cir. 1987)).

        2.    CUTSA

California's legislature enacted CUTSA in 1984 "to provide

unitary definitions of trade secret and trade secret

misappropriation, and a single statute of limitations for the

various property, quasi-contractual, and violation of fiduciary

relationship theories of noncontractual liability utilized at

common law." Am. Credit Indem. Co. v. Sacks, 213 Cal. App. 3d 622,

630 (1989) (internal quotation marks omitted).  It defines a "trade

secret" as:

> information, including a formula, pattern, compilation,
> program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or
> potential, from not being generally known to the
> public or to other persons who can obtain economic
> value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable
> under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

"CUTSA preempts common law claims that are based on

misappropriation of a trade secret." Ali v. Fasteners for Retail,

Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008) (internal

quotation marks omitted).  However, CUTSA exempts certain claims

from the scope of its preemption: it "does not affect

(1) contractual remedies, whether or not based upon

misappropriation of a trade secret, (2) other civil remedies that

United States District Court
For the Northern District of California

are not based upon misappropriation of a trade secret, or

(3) criminal remedies, whether or not based upon misappropriation

of a trade secret." Cal. Civ. Code § 3426.7(b).

"Courts have held that where a claim is based on the 'identical nucleus' of facts as a trade secrets misappropriation claim, it is preempted by [C]UTSA." <u>Silicon Image, Inc.</u>, 2007 WL 1455903, at *9 (N.D. Cal.). "The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b) focuses on whether other claims are no more than a restatement of the same operative facts supporting trade secret misappropriation. . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA preempts the other claim." <u>Convolve, Inc. v. Compaq Computer Corp.</u>, 2006 WL 839022, at *6 (S.D.N.Y.) (applying California law).

B.   Common Law Misappropriation Claim

Plaintiff alleges that Sleeping Well misappropriated "its Trade Secrets, Trade Dress and other intellectual property related to its Confidential Information, the PureSleep Method, the puresleep.com website, telephone ordering system and television commercial." Compl. ¶ 141.  It also incorporates paragraphs 1-139 of its Complaint into its claim for misappropriation.  Sleeping Well contends that the Copyright Act preempts this claim to the extent that it is based on the copying of elements from Plaintiff's website.

Plaintiff's website or some its elements may fall within the subject matter covered by copyright.  For instance, its screening questionnaire, its television commercial and its logo could fall

17

**United States District Court**
For the Northern District of California

within the scope of copyright.

To the extent that Plaintiff's misappropriation claim rests on elements covered by the Copyright Act, Plaintiff must offer an "extra element" to distinguish this claim from one for copyright infringement.  Plaintiff analogizes its misappropriation claim to one for misrepresentation, which courts have concluded avoids copyright preemption.  See, e.g., Silicon Image, Inc. v. Analogix Semiconductor, Inc., 2007 WL 1455903, at *7-*8 (N.D. Cal.).  However, the torts of misappropriation and misrepresentation are different: misappropriation involves a defendant taking another's property for "little or no cost" and appropriating it to the detriment of the plaintiff.  See Hollywood Screentest of Am., Inc. v. NBC Universal, Inc., 151 Cal. App. 4th 631, 650 (2007).  On the other hand, misrepresentation involves fraudulent conduct.  Plaintiff avers that Sleeping Well acquired elements of its website for little or no cost and used this intellectual property to its detriment.  The gravamen of this claim is that Sleeping Well unlawfully acquired property, which constitutes misappropriation or copyright infringement, not misrepresentation.

Plaintiff cites Downing to argue that misappropriation claims are not always preempted.  However, Downing involves the misappropriation of the names and likenesses of individuals, which is not subject matter protected under the Copyright Act.  265 F.3d at 1004-05.  Thus, as to the portion of its claim directed to subject matter susceptible to copyright protection, Plaintiff's reliance on Downing is unavailing.

Plaintiff acknowledges that CUTSA preempts its

18

United States District Court

For the Northern District of California

misappropriation claim to the extent that it involves confidential information subject to trade secret protections.  Plaintiff explicitly alleges in this claim that Sleeping Well misappropriated its trade secrets.  It is not apparent what this claim addresses beyond the trade secrets implicated in Plaintiff's CUTSA claim.

The Court dismisses this claim with leave to amend.  Plaintiff must plead clearly what non-trade-secrets Sleeping Well allegedly misappropriated.  In addition, Plaintiff must aver what has been misappropriated that is not subject to copyright protection or allege a cause of action with an extra element that distinguishes the rights asserted from those provided under the Copyright Act.

C.   Statutory Unfair Competition Claim

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the basis for a UCL claim.  Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law."  Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).

Plaintiff does not identify the conduct upon which its UCL claim rests.  It pleads that Sleeping Well's conduct is "unlawful and unfair," Compl. ¶ 146, and incorporates into its UCL claim

19

United States District Court
For the Northern District of California

paragraphs 1-143 of the Complaint.

To the extent that Plaintiff brings this claim based on conduct involving subject matter covered by the Copyright Act, the claim is preempted if it implicates rights contained in that Act. Furthermore, this claim is preempted by CUTSA to the extent that it is based on the misappropriation of Plaintiffs' trade secrets.

Although Plaintiff's UCL claim may not be preempted in its entirety, the Court nevertheless dismisses it with leave to amend. Plaintiff's vague allegations fail to give Sleeping Well adequate notice of the nature of any unpreempted element of this claim. Plaintiff must identify the conduct of Sleeping Well that is actionable under a theory of liability that applies the UCL in a manner that avoids preemption.  Plaintiff must specify whether the conduct is unlawful -- and if so, under what law -- or if it is unfair or fraudulent.  If fraud is alleged, it must be plead with particularity under Federal Rule of Civil Procedure 9(b).

D.   Common Law Unfair Competition Claim

"The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another."  Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1263 (1992).  "The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." Id. (citation omitted).  The tort requires a showing of competitive injury.  Id. at 1264.

The thrust of Plaintiff's common law unfair competition claim is that Sleeping Well markets its MRD in a way that suggests that

20

United States District Court
For the Northern District of California

the product is associated with Plaintiff.  Regardless of whether the advertising material at issue constitutes copyright-protected subject matter, this claim asserts rights separate from those provided under copyright law.  The unfair competition tort involves "the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market."  Id. at 1263.  In other words, the tort protects against competitive injury resulting from others trading on a party's goodwill.  This sufficiently provides the "extra element" necessary to avoid preemption by the Copyright Act.[4]

Accordingly, the Copyright Act does not preempt Plaintiff's common law unfair competition claim.  Nor is the claim preempted by the CUTSA, to the extent that it does not implicate protected trade secrets.  In addition, the claim sufficiently provides Sleeping Well notice of the conduct of which Plaintiff complains.  The Court therefore denies Sleeping Well's motion to dismiss this claim.

E.   Unjust Enrichment Claim

California courts appear to be split on whether there is an independent cause of action for unjust enrichment.  Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2007)

---

[4] Sleeping Well cites Kodadek v. MTV Networks, Inc., 152 F.3d 1209 (9th Cir. 1998), and Motown Record Corp. v. George A. Hormel & Co., 657 F. Supp. 1236, 1239-40 (C.D. Cal. 1987), to argue that the Copyright Act preempts Plaintiff's unfair competition and unjust enrichment claims.  However, both cases addressed preemption of the plaintiffs' claims under California's Unfair Competition Law, which were premised on copyright violations.  See Kodadek, 152 F.3d at 1212-13; Motown Records Corp., 657 F. Supp. at 1239-40.  Plaintiff's claims are not limited to seeking recovery for copyright violations.  To the extent that they are, they are preempted.

1  (applying California law).  One view is that unjust enrichment is

2  not a cause of action, or even a remedy, but rather a general

3  principle, underlying various legal doctrines and remedies.

4  McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004).  In

5  McBride, the court construed a "purported" unjust enrichment claim

6  as a cause of action seeking restitution.  Id.  There are at least

7  two potential bases for a cause of action seeking restitution:

8  (1) an alternative to breach of contract damages when the parties

9  had a contract which was procured by fraud or is unenforceable for

10  some reason; and (2) where the defendant obtained a benefit from

11  the plaintiff by fraud, duress, conversion, or similar conduct and

12  the plaintiff chooses not to sue in tort but to seek restitution on

13  a quasi-contract theory.  Id. at 388.  In the latter case, the law

14  implies a contract, or quasi-contract, without regard to the

15  parties' intent, to avoid unjust enrichment.  Id.

16      Another view is that a cause of action for unjust enrichment

17  exists and its elements are receipt of a benefit and unjust

18  retention of the benefit at the expense of another.  Lectrodryer v.

19  SeoulBank, 77 Cal. App. 4th 723, 726 (2000); First Nationwide

20  Savings v. Perry, 11 Cal. App. 4th 1657, 1662-63 (1992).

21      Plaintiff pleads that Sleeping Well has "been unjustly

22  enriched, including without limitation by unjustly retaining the

23  benefits from unauthorized use of SSP's Confidential Information,

24  Trade Secrets and Related Information."  Compl. ¶ 179.  As with its

25  UCL pleadings, this broad allegation encompasses a wide variety of

26  conduct and does not provide Sleeping Well with sufficient notice.

27      Because the conduct at issue in this claim is not clear, the

28                                    22

potential preemptive effects of the Copyright Act and CUTSA are not
certain.  To the extent that Plaintiff intends to recover on this
claim for subject matter within the purview of the Copyright Act,
it cannot do so if the alleged conduct only infringes rights
contained in that Act.  Moreover, this claim is preempted by CUTSA
to the extent that it is based on Plaintiff's trade secrets.

The Court dismisses Plaintiff's unjust enrichment claim with
leave to amend because it fails to provide Sleeping Well with
adequate notice.  Plaintiff must identify the conduct for which it
seeks a restitutionary remedy that is not preempted.

V.   Civil Conspiracy Claim

Plaintiff alleges that Sleeping Well conspired with Dr.
Lieberman "for the purpose of misappropriating SSP's intellectual
property."  Compl. ¶ 164.  Sleeping Well asserts that this claim
fails because conspiracy does not constitute a cause of action
under California law.  Also, citing Accuimage Diagnostics Corp. v.
Terarecon, Inc., 260 F. Supp. 2d 941 (N.D. Cal. 2003), Sleeping
Well argues that dismissal is required because Plaintiff did not
include its conspiracy allegations in the same section of its
complaint as the allegations supporting its claim for
misappropriation.

Civil conspiracy "is not a cause of action, but a legal
doctrine that imposes liability on persons who, although not
actually committing a tort themselves, share with the immediate
tortfeasors a common plan or design in its perpetration."  Applied
Equipment Corp., 7 Cal. 4th at 510 (citing Wyatt v. Union Mortgage
Co., 24 Cal. 3d 773, 784 (1979)).  "Standing alone, a conspiracy

23

does no harm and engenders no tort liability.  It must be activated by the commission of an actual tort." Applied Equipment Corp., 7 Cal. 4th at 511.

Although civil conspiracy is not an independent cause of action, this does not warrant dismissal.  The claim provides a basis on which Sleeping Well and Dr. Lieberman could both be liable as co-conspirators for harm resulting from their alleged misappropriation of Plaintiff's intellectual property.

However, Plaintiff does not clearly identify the tort which Sleeping Well and Dr. Lieberman conspired to commit.  Plaintiff's allegation that they conspired to misappropriate its intellectual property could encompass, at the least, both its CUTSA and common law misappropriation claims.  As in Accuimage, Plaintiff has failed to provide Sleeping Well with adequate notice of which torts they allegedly conspired to commit.[5] See 260 F. Supp. 2d at 947-48. Accordingly, the Court dismisses Plaintiff's civil conspiracy claim with leave to amend.  Plaintiff must identify the tortious conduct for which it seeks conspiratorial liability.

//

//

//

//

----

[5] As noted above, Sleeping Well contends that Plaintiff must plead its allegations of conspiracy in the sections of the complaint that address the underlying tort.  Although the Accuimage court required such pleading, it did so only to ensure that the defendants had notice of which torts were the subject of the plaintiff's conspiracy allegations.  260 F. Supp. 2d at 947-48. However, the court did not, as Sleeping Well suggests, set this out as a formal pleading requirement for civil conspiracy claims.

United States District Court
For the Northern District of California

24

CONCLUSION

For the foregoing reasons, the Court GRANTS in part Sleeping Well's Motion to Dismiss and DENIES it in part.  (Docket No. 27.) The Court's holding is summarized as follows:

1.  Plaintiff's trade dress infringement claim under the Lanham Act is dismissed with leave to amend to articulate its alleged trade dress with greater detail.  In any amended complaint, Plaintiff must allege a protectable trade dress on which a Lanham Act claim could be based without impermissibly encroaching upon copyright interests.

2.  Plaintiff's copyright infringement claim is dismissed without prejudice because Plaintiff has not met the requirements of 17 U.S.C. § 411(a).  Plaintiff may move to amend its complaint to add a copyright claim if the Copyright Office approves its application for registration during the pendency of this action.

3.  Plaintiff's tortious interference with contract claim is dismissed with leave to amend.  Sleeping Well cannot be held liable for tortiously interfering with a contract entered into by its agents for its benefit.  Plaintiff may amend its complaint to plead tortious interference with a contract between Plaintiff and individuals who are not agents of Sleeping Well.

4.  Plaintiff's misappropriation claim is dismissed with leave to amend to plead clearly what non-trade secrets Sleeping Well allegedly misappropriated.  In addition,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiff must plead material that does not fall within
the subject matter of copyright or allege a cause of
action with an extra element that distinguishes the
rights asserted under this claim from those provided by
the Copyright Act.

5.  Plaintiff's UCL claim is dismissed with leave to amend.
Plaintiff must plead facts that identify the conduct of
Sleeping Well that is actionable under the UCL, and
specify whether it is unlawful -- and if so, under what
law -- or if it is unfair or fraudulent.  If this claim
sounds in fraud, Plaintiff must plead in accordance with
Rule 9(b).  The conduct plead must not be equivalent to
the infringement of copyrightable material or the use of
trade secrets.

6.  Plaintiff's common law unfair competition claim may go
forward.  The Copyright Act does not preempt this claim.
Nor is the claim preempted by the CUTSA, to the extent
that the facts on which it is based differ from those
supporting Plaintiff's CUTSA claim.

7.  Plaintiff's unjust enrichment claim is dismissed with
leave to amend.  Plaintiff must identify the conduct that
supports this claim, which must not be equivalent to the
infringement of copyrightable material or the use of
trade secrets.

8.  Plaintiff's civil conspiracy claim is dismissed with
leave to amend.  Plaintiff must identify the torts for
which it seeks conspiratorial liability.

26

Plaintiff may file an amended complaint addressing the deficiencies detailed above within fourteen days of the date of this Order.  If Plaintiff does so, Defendants may file a motion to dismiss three weeks thereafter, with Plaintiff's opposition due two weeks following and Defendants' reply due one week after that.

IT IS SO ORDERED.

Dated: May 10, 2010

_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California