1
2
3
4
5
6
7               UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9
10   SLEEP SCIENCE PARTNERS INC.,)
                                )
11           Plaintiff(s),      )      No. C09-4200 CW (BZ)
                                )
12      v.                      )      **ORDER GRANTING PLAINTIFF'S**
                                )      **REQUEST FOR A PROTECTIVE**
13                              )      **ORDER**
     AVERY LIEBERMAN, et al.,   )
14                              )
             Defendant(s).      )
15   _____)

16       Before me is plaintiff's motion for a protective order.

17   It seeks to prohibit local counsel (Patrick McCarthy) for

18   defendants from representing plaintiff's former CEO (Steve

19   Welker) during the second day of his deposition testimony.[1]

20   Welker is not a defendant in this action, but plaintiff

21   alleges he misappropriated plaintiff's trade secrets during

22   his employment with defendants.  For the reasons explained

23   below, plaintiff's Motion is **GRANTED**.

24       Courts are granted the inherent power to preserve the

25   _____

26       [1]   Plaintiff commenced the deposition of Welker, who
     was not represented by counsel, on June 11, 2010.  At the end
27   of the day, Welker's deposition was adjourned and continued to
     a later date.  McCarthy then informed plaintiff that he would
28   represent Welker during the second part of Welker's
     deposition.  See Declaration of Alice A. Kelly, ¶ 3 and 4.

                                 1

1  integrity of the adversarial process.  Chambers v. NASCO,
2  Inc., 501 U.S. 32, 43 (1991); In re Coordinated Pretrial
3  Proceedings, 658 F.2d 1355, 1358 (9th Cir. 1981) ("the
4  district court has the prime responsibility for controlling
5  the conduct of lawyers practicing before it").  This
6  responsibility includes the power to issue protective orders
7  or disqualify counsel to prevent the disclosure and use of
8  confidential or privileged information by adverse counsel.
9  See Cargill v. Budine, 2007 WL 1813762 (E.D. Cal. 2007);
10  Packard Bell NEC, Inc., v. Aztech Sys. LTD., 2001 WL 880957
11  (C.D. Cal. 2001).

12      In Cargill, employees were prohibited from retaining
13  defendant's counsel because their knowledge of their former
14  employer's confidential and privileged information threatened
15  the integrity of the trial process.  2007 WL 1813762.  In
16  reaching this decision, Cargill relied on Canon 9 of the ABA's
17  Model Code which states that a "lawyer should avoid even the
18  appearance of professional impropriety."[2]  Id.  Cargill's
19  overriding concern was the potential that confidential and
20  privileged information may be improperly shared or used to
21  gain a tactical advantage.  Id.; see also Packard Bell, 2001
22  WL 880957.

23      I have the same concerns here.  Welker was an original

24
25  [2]     The ABA's ethical rules may be persuasive when there
    is no controlling California rule, as is the case here.  See
26  State Bar of Cal. Standing Comm. on Prof'l Responsibility and
    Conduct, Formal Op. No. 1983-71.  Further, federal courts,
27  through case law, have the inherent power to apply provisions
    of the former Model Code even though the Northern District of
28  California has not specifically adopted it.  See In re AFI
    Holding, Inc., 355 B.R. 139, 153 n. 15 (B.A.P. 9th Cir. 2006).

2

1  founder of plaintiff's company, spent three years as CEO
2  operating the company, remains the company's second largest
3  shareholder, and has an agreement with the company to not
4  disclose any confidential information.  See Declaration of
5  Heather Flick, ¶¶ 3, 4, 6, and 8.  Defendants' representation
6  of Welker allows him, through the attorney-client
7  relationship, to potentially disclose confidential,
8  privileged, and trade secret information he learned during his
9  extensive dealings with plaintiff.  The potential for this
10  disclosure and the appearance of impropriety compromises the
11  "integrity of the judicial process" in the same manner as in
12  Cargill.  2007 WL 1813762 at *14.

13      Many of the arguments defendants make in opposition to
14  the protective order were explicitly rejected by Cargill.  For
15  instance, defendants argue Welker was not privy to any of
16  plaintiff's privileged information.  But this contention is
17  undermined by the fact that Welker oversaw the company's daily
18  activities as plaintiff's CEO for three years.  See id. at *11
19  (employee's high-level position at former company is one
20  reason there is a presumption that he knew privileged
21  information).  Defendants further contend that they, along
22  with Welker, can determine what information is confidential
23  and privileged and then make sure to not reveal this
24  information.  Cargill also found this argument unpersuasive
25  since former employees in an adverse proceeding cannot be
26  permitted to determine what information is confidential.  Id.
27  at *11-12.  This concern is particularly important in this
28  matter since Welker testifies he does not have knowledge of

3

1 | any confidential information while plaintiff asserts the
2 | opposite.[3]

3 |     In an attempt to distinguish Cargill, defendants contend
4 | the case does not apply to Welker's situation because he did
5 | not have attorney-client communications while he was employed
6 | with plaintiff.  This is disputed.  Plaintiff's declaration
7 | states that while Welker was CEO he was privy to confidential
8 | information, including attorney-client communications.  See
9 | Declaration of Heather Flick, ¶ 4.  Defendants object to this
10 | declaration due to its lack of specificity.  See Defendants'
11 | Objections to Declarations of Heather G. Flick and Alice A.
12 | Kelley.  But, as explained in Cargill, plaintiff did not need
13 | to identify the specific attorney-client communications Welker
14 | participated in because these communications are presumed due
15 | to Welker's high-level position at the company.  Id. at *11-
16 | 12.

17 |     Based on the above, the likelihood that Welker possesses
18 | confidential information regarding the plaintiff, coupled with
19 | the potential that Welker may share this information with
20 | defendants in the course of his representation by McCarthy,
21 | ///
22 | ///
23 | ///
24 | ///
25 | ///
26 |

27 | [3]     To the extent defendant relies on cases permitting
an attorney for one party to communicate with former employees
of another party, that reliance is misplaced.  Counsel for
28 | defendants are representing Welker, not just communicating
with him.

4

1 | creates a sufficient danger of impropriety, that plaintiff's
2 | motion for a protective order should be **GRANTED**.[4]
3 |
4 | Dated: September 30, 2010
5 |
6 | Bernard Zimmerman
United States Magistrate Judge
7 |
G:\BZALL\-REFS\SLEEP SCIENCE V. LIEBERMAN\DISCOVERY ORDER (VERSION 2).wpd
8 |
...

---

28 | [4]    Because I grant plaintiff's motion for a protective order, defendant's request for sanctions is denied.